UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHARD ALLEN DAVIS,

        Petitioner,

v.

THOMAS MACKIE,

        Respondent.
_____/

Case No. 1:17-cv-1117

Honorable Paul L. Maloney

## **OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. **Factual allegations**

Petitioner Richard Allen Davis is incarcerated with the Michigan Department of Corrections at Kinross Correctional Facility (KCF) in Kincheloe, Michigan. On January 12, 2015, in the Clinton County Circuit Court, Petitioner entered a plea of *nolo contendere* to a charge of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a). (Plea Tr., ECF No. 2-2.) On December 15, 2015, the court imposed a sentence of 10 to 25 years' imprisonment. (J. of Sentence, ECF No. 2-6.)

Petitioner entered his plea under the terms of an agreement struck with the prosecutor on the date of the plea. In exchange for Petitioner's plea, the prosecutor agreed to dismiss a second count of first-degree criminal sexual conduct and a notice regarding Petitioner's status as a habitual offender-second offense in that case, as well as two other first-degree criminal sexual conduct charges in two other cases pending in Clinton County Circuit Court. (Plea Tr., ECF No. 2-2, PageID.270.) The prosecutor also agreed to recommend, under *People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982),[1] an initial sentence within "the appropriately run guidelines." (*Id.*)

In Michigan, unless the only punishment prescribed by law for an offense is life imprisonment, the court imposing sentence must fix a minimum term of imprisonment and a maximum term; however, the maximum penalty provided by statute is the maximum term. MICH. COMP. LAWS §§ 769.8, 769.9. For some offenses, the maximum penalty is fixed. *See, e.g.*, MICH. COMP. LAWS § 750.88 (assault with intent to rob; unarmed—15 years). For other offenses,

---

[1] In *People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982), the Michigan Supreme Court held that, if a plea agreement is dependent on a prosecutor's stipulation to a specific sentence, the judge must provide the defendant an opportunity to withdraw the plea if the judge will not accept the sentencing recommendation. In this instance, because the agreement was to any sentence within the guidelines, presumably only an upward departure beyond the guidelines minimum range would permit Petitioner the opportunity to withdraw his plea.

including the first-degree criminal sexual conduct offense of which Petitioner was convicted, the maximum penalty is life or any term of years. MICH. COMP. LAWS § 750.520b(2). Thus, the trial court has discretion to impose a maximum penalty. MICH. COMP. LAWS § 769.9(2). In this instance, however, because of Petitioner's age and the age of his victim, the court could not impose a maximum penalty less than 25 years. MICH. COMP. LAWS § 750.520b(2)(b).

The minimum penalty is typically within the discretion of the court as well;[2] however, until recently,[3] with certain limited exceptions, the court could only exercise that discretion within a range provided by Michigan's sentencing guidelines, MICH. COMP. LAWS §§ 777.1-777.69. The guidelines call for consideration of variables relating to the defendant's prior criminal record and the offense. Assessment of those variables generates a score with respect to the defendant's prior record and a score with respect to the offense. Using those scores, one can identify the appropriate minimum sentence range on grids provided by statute. MICH. COMP. LAWS §§ 777.61-777.69.

Petitioner's counsel and the prosecutor "ran" the guidelines to facilitate an assessment of the consequences of the plea by Petitioner. (Mot. Hr'g Tr. I, ECF No. 2-3, PageID.288-292.) They concluded that Petitioner's guidelines range would be 6 years, 9 months to 12 years. (*Id.*, PageID.299-300, 315-316.) Petitioner's counsel cautioned Petitioner, however, that the calculation was preliminary and subject to determination by the court. (*Id.*, PageID.299-300, 303, 306, 313-314.)

---

[2] There are instances where the minimum penalty is set by a statute other than the sentencing guidelines. MICH. COMP. LAWS § 769.34(a) ("If a statute mandates a minimum sentence . . . the court shall impose sentence in accordance with the statute.").

[3] In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court made the Michigan sentencing guidelines advisory rather than mandatory.

3

Petitioner took the deal. He entered his *nolo contendere* plea that day.[4] Petitioner acknowledged the terms of the plea during the hearing: he would enter a plea of no contest to Count 1 in file number 14-9287-FH; in exchange for that plea, the prosecutor would dismiss Count 2 in file number 14-9287-FH as well as the habitual offender notice and all charges in the other two cases. (*Id.*, PageID.270-271.) The only agreement regarding sentence was that it would be "*Killebrewed*" to "the appropriately run guidelines." (*Id.*)

The prosecutor read the charge and the maximum punishments: "life or any term of years in the Department of Corrections and mandatory AIDS/STD testing and sexual offender registration." (*Id.*, PageID.271.) Petitioner acknowledged the charge and the maximum punishments. (*Id.*) The court informed Petitioner that it would consider everything in Petitioner's history, good and bad alike, in looking for a fair sentence within the maximums. (*Id.*, PageID.272.) Petitioner acknowledged that there were no threats and no promises that induced him to give up the rights he was yielding by entering his plea. (*Id.*, 273-274.) The court specifically informed Petitioner that the court had not agreed on any particular sentence with anyone. (*Id.*, PageID.275.)

Before the initially scheduled sentencing hearing, Petitioner and his counsel learned that the calculated guidelines far exceeded the estimate calculated by Petitioner's counsel and the prosecutor. The minimum range jumped to 14 years, 3 months to 23 years, 9 months. (Mot. Hr'g

---

[4] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted). Thus, a plea of *nolo contendere* waives a claim that the evidence of guilt is insufficient in the same way that a plea of guilty does. *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010); *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982).

Tr., ECF No. 2-3, PageID.309.) The principal reason for the change was the inclusion of a 1989 conviction for assault with intent to commit criminal sexual penetration conviction in Petitioner's prior record. (*Id.*) The prosecutor and defense counsel were aware of the conviction when they calculated the guidelines; but, it was sufficiently old that they believed it would not be counted under the guidelines. They did not know, and Petitioner did not tell them, that Petitioner had an intervening 1995 misdemeanor conviction for driving on a suspended license that served as a bridge to permit the inclusion of the 1989 conviction.

Petitioner moved to withdraw his plea. The court heard testimony from Petitioner's counsel, who had withdrawn by that time; Petitioner's girlfriend, who had sat in on the plea discussion; and Petitioner. Petitioner has attached the transcripts of the hearings on the motion to withdraw as Exhibits 3 and 4 to his petition. (Mot. Hr'g Tr. I & Mot. Hr'g Tr. II, ECF Nos. 2-3 and 2-4.)

Petitioner contended his plea was rendered involuntary by the gross discrepancy between the sentence that he contemplated when entering his plea and the sentence as calculated for sentencing. Petitioner's argument is premised on his claim that he misunderstood the plea in two significant respects. First, Petitioner believed that the range of 6 years, 9 months to 12 years was an established part of the agreement. Second, Petitioner believed that 6 years, 9 months was the minimum sentence and 12 years was the maximum sentence. According to Petitioner, he entered a plea expecting that he might get out of prison perhaps as soon as 6 years, 9 months, but that he certainly would get out after no longer than 12 years. Thus, Petitioner's expectations were frustrated not only at the minimum end of his sentence which jumped from 6 years, 9 months to perhaps as long as 23 years, 9 months, but also at the maximum end which jumped from 12 years to perhaps as long as life imprisonment.

5

On November 23, 2015, the trial court judge entered an opinion and order denying Petitioner's motion to withdraw his plea. (Op. & Ord., ECF No. 2-5.) Essentially, the court found Petitioner's claimed misunderstandings incredible. (*Id.*, PageID.432) ("In short, the testimony of Ms. Johnson and Mr. Davis relating to their conversations with [Petitioner's counsel] before the plea was offered is not accepted as an accurate rendition of those exchanges.").

Although Petitioner's exposure was significantly greater than he expected, his actual sentence was not. The trial court sentenced Petitioner on December 15, 2015, to 10 to 25 years. (J. of Sentence, ECF No. 2-6.) The maximum sentence imposed was the lowest possible sentence the court could impose given the statutory mandate. MICH. COMP. LAWS § 750.520b(2)(b). The minimum sentence represented a discretionary downward departure from the range provided by the guidelines.

Nonetheless, Petitioner sought leave to appeal in the Michigan Court of Appeals and then the Michigan Supreme Court. Those courts denied leave on June 6, 2016, and December 28, 2016, respectively. (Mich. Ct. App. Ord., ECF No. 2-7; Mich. Ord., ECF No. 2-8.)

On December 19, 2017, Petitioner filed his habeas corpus petition raising the same two grounds for relief he had raised in the state appellate courts:

I. The Michigan trial court unreasonably applied clearly established federal law, where it concluded that Petitioner's plea was knowingly and understandingly made where the court analyzed what Petitioner was told but completely failed to consider Petitioner's subjective misunderstanding (which caused him to enter his plea unknowing of significant relevant consequences, where he would not have pled had he understood the terms.)

II. The trial court unreasonably applied clearly established federal law, where it held that Petitioner Richard Davis was not denied his Sixth Amendment right to effective assistance of counsel, where Petitioner misunderstood what counsel tried to convey to him when counsel failed to adequately apprise him of his potential sentence with the plea offer.

(Pet., ECF No.2, PageID.224.)

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. \_\_\_, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Knowing and understanding plea

#### A. Clearly established federal law regarding valid guilty pleas

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very

power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Instead, he claims that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also

understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Petitioner's first habeas issue attacks the voluntary nature of his plea on this ground; he contends he misunderstood the consequences of his plea.

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57. Petitioner's second habeas issue attacks the voluntary nature of his plea on this ground; he contends his misunderstanding was the product of ineffective assistance from his counsel.

B. <u>The state court's determinations regarding Petitioner's plea</u>

The trial court addressed both of Petitioner's grounds for attacking the voluntary nature of his plea when it denied Petitioner's motion to withdraw the plea. Although the trial court considered the issue under state law, specifically MICH. CT. R. 6.310(B), the court's analysis looked to the same issues that ensure a plea comports with the requirements of due process: was

the plea "understandingly, knowingly, voluntarily, and accurately made." (Op. & Ord., ECF No. 2-5, PageID.426.)

The trial court found that the court had advised Petitioner of the offense that was the subject of the plea, the maximum possible sentence, and the trial and appellate rights being waived. (*Id.*, PageID.430.) The court then evaluated Petitioner's claim that he misunderstood the consequences of his plea. First, the court found that Petitioner's misunderstanding that his maximum sentence would be no more than 12 years was not credible. That claim was belied by the written information, the court's express advice on the record, and Petitioner's acknowledgment of that advice on the record. (*Id.*) The court determined "[i]t was and is clear that Mr. Davis knew the legislatively established maximum penalty for the offense to which he was pleading guilty." (*Id.*) Second, the court found that Petitioner's misunderstanding that the guidelines were set in stone at 6 years, 9 months to 12 years was not credible. The court found credible the testimony of Petitioner's counsel that (1) there was no agreement that the calculated guideline range was conclusive or final and (2) counsel had informed Petitioner not only that the calculated range was preliminary but that the court would have to determine the appropriate range as well. (*Id.*, PageID.430-431.)

The court concluded that counsel's testimony was consistent with the plea transcript, the express statement that the final sentence would be within the appropriately scored guidelines, the absence of any reference to a specific calculated guideline at the plea hearing, Petitioner's denial of any other promise for his plea, and the affirmation of defense counsel and the prosecutor that there were no other promises. (*Id.*, PageID.431-432.) The testimony of Petitioner and his girlfriend regarding their conversations with counsel, the court concluded, was "not accepted as an accurate rendition of those exchanges." (*Id.*, PageID.432.) Accordingly, the

11

court concluded that the "plea was understandingly, knowingly, voluntarily, and accurately made." (*Id.*)

###    C.   The reasonableness of the state court's determinations

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

The trial court's exploration of the voluntary and knowing character of the plea at the plea hearing, and then again after considering testimony in connection with the motion to withdraw the plea, is in no way contrary to the clearly established federal law identified above. The court informed Petitioner of the consequences of his plea. The court gave Petitioner every opportunity to raise the plea-inducing promise on which Petitioner now relies: a sentence with a minimum term of six years, nine months, and a maximum term of 12 years. Yet Petitioner said nothing despite the trial court's statements that (1) the court had not agreed to any sentence; (2) the court would calculate the sentence; and (3) the maximum could be life imprisonment.

The trial court's factual findings regarding the credibility of counsel, on the one hand, and the lack of credibility of Petitioner and his girlfriend, on the other, are entirely reasonable and presumed correct. Petitioner offers no evidence to overcome that presumption, much less clear and convincing evidence, other than his avowed subjective misunderstanding. Such subjective misunderstandings have been routinely rejected as grounds to invalidate a guilty plea. *See Marks v. Davis,* 504 F. App'x 383, 385-386 (6th Cir. 2012) (based on plea colloquy, court rejected petitioner's claim of misunderstanding that the calculated minimum range under Michigan's sentencing guidelines was actually the minimum and maximum sentence); *McAdoo*, 365 F.3d at 487 (court rejected petitioner's claim that subjective misunderstanding regarding meaning of life sentence versus parolable life sentence rendered plea involuntary); *Nichols v. Perini*, 818 F.2d 554, 558 (6th Cir. 1987) (court held that where sentence was longer than that expected based on petitioner's subjective belief regarding likely sentence, even when that belief is prompted by counsel's "guesstimate," there was no procedural or constitutional defect); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972) ("[A] defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea.").

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent assertion that the circumstances were different than he represented at the hearing. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial

court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Baker*, 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90.

The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. *Warner*, 975 F.2d at 1210. *See also Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy").

Accordingly, the state court's rejection of Petitioner's subjective misunderstanding as a ground to invalidate his plea, and the court's reliance on Petitioner's statements during the

14

plea colloquy to support the validity of the plea, are neither contrary to, nor an unreasonable application of, clearly established federal law. Moreover, the state court's determinations of fact in support of its conclusions are not unreasonable on this record.[5]

### D. The effectiveness of counsel's assistance

Petitioner contends that it was counsel's fault that Petitioner misunderstood the consequences of his plea in two respects: (1) that the calculated range of 6 years, 9 months to 12 years was part of the agreement; and (2) that 12 years was the maximum sentence. In evaluating the validity of Petitioner's plea, the trial court did not directly address the effectiveness of counsel's assistance. However, the court's conclusions with respect to validity mandate a determination that Petitioner's challenges to the effectiveness of his counsel's assistance are meritless.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea

---

[5] Although the state court record is not complete, Petitioner has attached to his petition all of the documents relevant to a determination of the validity of his plea.

process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Here, the trial court's findings refute Petitioner's claims on the first *Strickland* prong. The trial court found that Petitioner's counsel had informed Petitioner that the calculated range of 6 years, 9 months to 12 years was nothing more than "a preliminary assessment of the likely range based on the then-available information." (Op. & Order., ECF No. 2-5, PageID.431.) That finding forecloses Petitioner's claim that the calculated guidelines were set in stone as part of the plea agreement. The trial court also concluded that Petitioner knew that the maximum penalty was life, not 12 years, and that counsel would not tell his client that the maximum penalty for first-degree criminal sexual conduct was 12 years. (*Id*., PageID.430.) This finding precludes Petitioners' second claim. The findings are presumed correct. Petitioner has failed to overcome the presumptively correct findings with clear and convincing evidence. Thus, Petitioner's claims fail under *Strickland* at the first step of the analysis.

Even if counsel had misinformed Petitioner that the calculated guidelines were part of the plea agreement and that Petitioner's maximum sentence was 12 years, Petitioner's ineffective assistance claims would fail at the second step of the *Strickland* analysis. Petitioner's self-serving averments that he would not have entered his plea had he known the guidelines range could be other than 6 years, 9 months to 12 years, or that his maximum sentence could be more than 12 years, are unconvincing. If counsel's failings had caused Petitioner any misperceptions regarding the range of outcomes, the trial court corrected those misperceptions at the plea hearing. *Ramos*, 170 F.3d at 565 ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea.") The court very

16

directly disabused Petitioner of such notions at the plea hearing. Where a defendant indicates on the record that he understands the specific consequences of his plea, he is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker*, 781 F.2d at 90). To hold otherwise would "[render] the plea process meaningless . . . ." *Id.* Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court. *Id.* Accordingly, even if counsel made the professionally unreasonable statements that Petitioner attributes to him, Petitioner has failed to show that he suffered any prejudice as a result.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action

does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:  January 12, 2018              /s/ Paul L. Maloney
                                                                                Paul L. Maloney
                                                                                United States District Judge